**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

———————————

UNITED STATES OF AMERICA,

    Plaintiff,

                                    Case No. CR 22-0361-001 MLG

v.

RAYSHAWN BOYCE,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT**
**RAYSHAWN BOYCE'S MOTION TO SUPPRESS**

       This matter comes before the Court on Defendant Rayshawn Boyce's Motion to Suppress ("Motion"), filed on March 29, 2023. Doc. 69. The United States opposes the Motion. Doc. 72. Boyce filed a reply. Doc. 78. Having reviewed the parties' submissions and the applicable law, and having held a hearing on June 1, 2023, the Court denies the Motion.

**BACKGROUND**

**1.**    **Relevant facts**

       On the morning of January 18, 2022, in Bernalillo County, New Mexico, a doorbell camera captured two individuals pulling a postal worker out of his mail truck by the back of his shirt, throwing him to the ground, and demanding his postal keys at gunpoint using a wooden-handled revolver. Doc. 72 at 1-2; Doc. 69 at 38. The postal worker complied with the assailants' demands and detached his keys from his service belt and turned them over. Doc. 69 at 19. The doorbell camera footage showed one individual wearing a grey, short-sleeved hoody and blue pants. *Id.* at 20. After the robbery, the two fled the scene and entered a parked black Dodge Charger. *Id.* at 21. The Charger was equipped with unique identifying characteristics including an aftermarket hood

with louvers and a rear spoiler on the trunk. *Id.* The vehicle's paint consisted of a combination of flat black and shiny black paint. *Id.*

On January 24, 2022, Postal Inspectors released a reward poster including photos of the Charger and of the individuals captured on the doorbell camera footage. *Id.* A week later, investigators received a tip from a confidential human source stating that they recognized one of the individuals from the poster as Boyce and that Boyce drives a Dodge Charger. *Id.* The source described Boyce as an "African American male, [in his] mid 20's [sic], [with a] medium build." *Id.* at 21-22. The source also stated that they had seen the Charger with the aftermarket hood around Gibson Boulevard SE and San Pedro Drive SE, specifically at the Minerva Canna dispensary. *Id.* at 21.

The next day, investigators conducted surveillance in that area. *Id.* at 22. Around 11:00 a.m., investigators observed a black Dodge Charger entering the parking lot of Minerva Canna. *Id.* The Charger matched the description of the vehicle used in the robbery with one exception—the hood did not have louvers. *Id.* Investigators observed someone believed to be Boyce exiting the Charger and entering Minerva Canna. *Id.* After leaving the dispensary, the individual appeared to conduct counter-surveillance measures by pulling into Sais Food Market 5 and idling in the parking lot for roughly twenty seconds. *Id.* Thereafter, the suspect "traveled to and parked in front of 336 Grove St. SE Apartment #2." *Id.* Investigators further noted that on at least two other occasions, they observed the Charger parked in the Apartment's lot. *Id.* at 21, 26.

The investigation continued over the next several days. On February 3, 2022, investigators followed up with the confidential human source. *Id.* at 23. The source reviewed the doorbell camera footage (which included audio) and confirmed with investigators that they recognized one individual as Boyce and that the voice matched that of Boyce's. *Id.* Investigators also obtained

2

video footage of Boyce's visits to the Minerva Canna. *Id.* Investigators reviewed the footage, noting that, on January 16, 2022, Boyce went to that dispensary dressed in "what appears to be the same short sleeve gray hoody that was worn during the robbery on January 18, 2022." *Id.* The footage appeared to show that the aftermarket hood had been replaced and equipped with a hood without louvers. *Id.* at 22-23. Investigators then confirmed with Boyce's probation officer that his listed residential address was 240 San Pablo Street NE, Apartment B, and that his reported vehicle was a 2008 black Dodge Charger. *Id.* at 23.

Based on the foregoing, Postal Inspector Kelly McNulty applied for a warrant to search the Charger and the Apartment. A United States Magistrate Judge determined that probable cause existed and issued a search warrant. *Id.* at 25.

Inexplicably, a number of facts germane to the probable cause inquiry were omitted from the affidavit including the following: Boyce was never seen at the San Pablo address (Doc. 72 at 5); Boyce was seen entering and leaving the Apartment (Doc. 72 at 10); a person identified by the initials S.D. was Boyce's girlfriend (Doc. 72 at 3); and S.D. leased and resided at the Apartment. Doc. 72 at 3. It also appears that there were no assigned parking spaces in the Apartment's lot. *Id.* at 4; Doc. 69 at 10. Nevertheless, with warrant in hand, officers executed the searches of the Charger and the Apartment in the early morning hours of February 15, 2022. Doc. 69 at 38.

Both Boyce (who was frequently an overnight guest at the Apartment) and his girlfriend, S.D., were present during the search. *Id.* at 8-9; Doc. 72 at 3. As a result of the search, officers uncovered a gray short-sleeved hoody, blue sweatpants, solid black tennis shoes, three handguns including a revolver with a wooden handle, and a rear spoiler. Doc. 69 at 38-39. Investigators also interviewed S.D. Doc. 72 at 3. Through that interview, it was revealed that S.D. leased a storage unit and that Boyce had stashed the hood of his car there. *Id.* She provided investigators with the

location, number, and key to the unit. *Id.* Although S.D. expressly consented to a search of the unit—and memorialized that consent in writing—Inspector McNulty still sought a second warrant to search the storage unit. *Id.* at 3. This new application largely parroted the materials submitted in support of the warrant to search the Apartment. *See generally* Doc. 69 at 29-42. However, Inspector McNulty's request included a few additional paragraphs documenting that S.D. was the lessee of the storage unit and that S.D. believed some of the Charger's body parts would be located there. *Id.* at 38. The warrant application also noted that S.D. had provided consent to search the storage unit, but that "out of an abundance of caution, [Inspector McNulty sought] court authorization to enter and search the storage unit." *Id*. A second warrant was subsequently issued and, as S.D. had indicated, the aftermarket hood with louvers was found in the storage unit. Doc. 2 at 6.

Eventually, Boyce, and a co-defendant, Marquae Kirkendoll were arrested and charged with (1) robbery of a postal employee and aiding and abetting in violation of 18 U.S.C. §§ 2114(a) and 2; (2) theft or receipt of stolen or reproduced keys or locks and aiding and abetting in violation of 18 U.S.C. §§ 1704 and 2; (3) using, carrying, and brandishing a firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in furtherance of such crime, and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and (4) conspiracy in violation of 18 U.S.C. § 924(o). Doc. 32.

**2.    Boyce's motion to suppress, the response, and reply**

Boyce now moves to suppress all evidence obtained and derived from the search of the Apartment. Doc. 69 at 1. In support of his request, Boyce first argues he has standing to challenge the search of S.D.'s residence. *Id.* at 7-9. He then claims that Inspector McNulty's affidavit lacked probable cause because it failed to provide any nexus between Boyce and the Apartment. *Id.* at 9-

11. From this position—i.e. believing that the search of S.D.'s apartment was unlawful—Boyce asks the Court to suppress all evidence obtained from the storage unit claiming that this evidence is "fruit of the poisonous tree" or, alternatively, that the search is void under *Franks v. Delaware*, 438 U.S. 154 (1978), due to the "patently false information" contained in the affidavit for the storage unit search.[1] *Id.* at 11-12.

The United States opposes the Motion. Doc. 72. The government argues that the facts provided in the warrant application establish the requisite connection between Boyce and the Apartment to give rise to probable cause, but even if that is not the case, the good-faith exception applies because a minimal nexus exists between the alleged criminal activity and the search of S.D.'s apartment. *Id.* 9-10. *See United States v. Cotto*, 995 F.3d 786, 796-97 (10th Cir. 2021). Boyce replies that the good-faith exception is inapplicable because the Magistrate Judge issued the warrant in reliance on a deliberately or recklessly false affidavit and the affidavit was "completely lacking indicia of probable cause." Doc. 78 at 2, 6-11, 14-16.

## OPINION

I.  **Boyce has standing to challenge the Apartment search; however, he does not have standing to contest the storage unit search.**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because Fourth Amendment rights are personal, a defendant "may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *United States v. Salvucci*, 448 U.S. 83, 85 (1980). "It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's Fourth Amendment rights." *United States*

---

[1] Boyce makes no arguments with respect to his standing to challenge the search of the storage unit.

*v. Carr*, 939 F.2d 1442, 1444 (10th Cir. 1991) (citations omitted). "Therefore, a defendant raising a Fourth Amendment challenge must first demonstrate that [the defendant] has standing to object to the search." *United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009). The salient considerations for assessing standing in the context of the Fourth Amendment's prohibition against unreasonable searches are two-fold: (1) whether the person challenging the search possessed a subjective expectation of privacy in the premises searched and (2) whether "society is prepared to recognize that expectation as reasonable." *United States v. Rhiger*, 315 F.3d 1283, 1285 (10th Cir. 2003).

As the preceding authority suggests, Fourth Amendment protections against unlawful searches are not necessarily constrained by traditional notions of ownership, and a legally recognized privacy interest may extend to places other than one's own home. *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) ("Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest."); *Rakas v. Illinois*, 439 U.S. 128, 142, (1978) ("[A] person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place."). It is well-settled, for example, that "an overnight guest in a house [has] the sort of expectation of privacy that the Fourth Amendment protects." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (citing *Minnesota v. Olson*, 495 U.S. 91 (1990)).

Applying these legal directives to the instant matter, it is apparent that Boyce has a legally valid privacy interest in S.D.'s residence. Even though the Apartment was not Boyce's primary residence, he was a frequent overnight guest. Doc. 69 at 9. In fact, he was present when the search warrant was executed at approximately 5:50 a.m. on February 15, 2022, after spending the night

at the Apartment. *Id.* at 8. Under *Olsen*, Boyce had a legitimate expectation of privacy in S.D.'s residence and the Court finds that he has standing to challenge the search of her apartment. *See* 495 U.S. at 98, 100.

However, the same cannot be said for Boyce's ability to contest the storage unit search. To establish standing, Boyce must demonstrate that he had a subjective expectation of privacy in the storage unit and that expectation is one that society is prepared to recognize as objectively reasonable. *See United States v. Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999) ("The burden is on Defendant to show that [Defendant] had such an expectation."); *Poe*, 556 F.3d at 1121. Boyce has made no showing—even *prima facie*—to demonstrate standing. *See Gordon*, 168 F.3d at 1226. He has not offered any evidence or argument that he had a subjective expectation of privacy in the storage unit or that, if he did maintain such an expectation, it is one that society is prepared to recognize as objectively reasonable. *See Poe*, 556 F.3d at 1121. Therefore, the Court concludes that Boyce does not have standing to contest the storage unit search.[2]

## II.     The search warrant affidavit for the Apartment failed to demonstrate a substantial nexus to establish probable cause; however, evidence uncovered at the Apartment need not be suppressed because the good-faith exception applies.

"In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (citing *United States v. Leon*, 468 U.S. 897, 924-25 (1984)). However, "[w]hen resolution of a Fourth Amendment issue is necessary to guide future action by law enforcement officers … it is appropriate for a reviewing

---

[2] Because Boyce does not have standing to contest the storage unit search and because the Court ultimately concludes that the Apartment search was lawful, *see infra* Section II, I need not address Boyce's alternative theories with respect to the storage unit search, namely, that the evidence from the unit constituted fruit of the poisonous tree or that the search warrant affidavit contained "patently false information" and thus should be voided under *Franks*. Doc. 69 at 11.

court to address this issue first." *Id.* (internal quotation marks and citation omitted). The Court believes this to be the case here. Accordingly, I begin with the probable cause issue before discussing the good-faith exception.

**A.      The search warrant affidavit for the Apartment failed to demonstrate a substantial nexus to establish probable cause.**

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To determine whether a search warrant is supported by probable cause, the reviewing court examines the supporting affidavit "by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011) (internal quotation marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). The court reviews the magistrate's determination of probable cause with great deference unless "there is no substantial basis for concluding that probable cause existed." *Danhauer*, 229 F.3d at 1006 (internal quotation marks and citation omitted). Probable cause "requires more than mere suspicion but less evidence than is necessary to convict." *United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980). Specifically, it "requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990). To establish this nexus, the affidavit "must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *Danhauer*, 229 F.3d at 1006.

Here, Boyce argues that the affidavit lacked probable cause because it failed to provide a substantial nexus between Boyce and the Apartment or sufficiently detail why criminal evidence would be found inside the residence. Doc. 69 at 9. For example, the affidavit "never asserts that

Boyce, at any time, ever entered [the Apartment] or that he had an acquaintance that lived there." *Id.* at 4. The United States counters, asserting that the affidavit was supported by probable cause because it established a connection between Boyce, the Charger, and the Apartment. Doc. 72 at 3-4. Specifically, the affidavit stated that "as of February 8, 2022, . . . [the Charger] is still being driven by [Boyce] and parking at the residence identified as [the Apartment]." Doc. 69 at 21. The United States points out that other statements in the affidavit suggest that there was a "pattern" of the Charger being parked in that same parking lot, which the government claims establish the requisite nexus. Doc. 72 at 4 n. 2.

The determination of sufficient nexus is a fact-intensive inquiry. *See United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009). "Certain non-exhaustive factors relevant to our nexus analysis include (1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Id.* And while the total absence of personal knowledge of criminal evidence at a residence is not fatal, a sufficient nexus is not established until "an affidavit describes circumstances which would warrant a person of reasonable caution to believe that the articles sought would be at [a] residence." *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992). Towards this end, "courts often rely on the opinion of police officers as to where contraband may be kept." *Id.* Indeed, "magistrate judges may draw their own reasonable conclusions, based on the Government's affidavit and the 'practical considerations of everyday life,' as to the likelihood that certain evidence will be found at a particular place." *Biglow*, 562 F.3d at 1280 (citation omitted).

Applying this legal authority to the facts presented, the Court finds that the affidavit failed

to establish a substantial nexus because it did not include sufficient facts to describe circumstances that would warrant a person of reasonable caution to believe that criminal evidence from the robbery would be found in the Apartment. *See $149,442.43*, 965 F.2d at 874. The primary evidence tying alleged wrongdoing and the potential recovery of contraband to the Apartment is Inspector McNulty's statement that the Charger (which was registered to Boyce) was seen parked in front of the Apartment. But this fact without more, is insufficient to establish a substantial nexus between criminal evidence from the robbery and the Apartment. *See United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) ("It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched."). To conclude otherwise would effectively sanction a problematic practice whereby law enforcement would be entitled to search a particular apartment based on the mere fact that a vehicle—that happens to be implicated in a crime—is parked in front of that apartment's door, in a shared parking lot with no assigned parking spaces. *Cf. United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring) ("[T]he government's unrestrained power to assemble data that reveal private aspects of identity is susceptible to abuse."). Such an outcome is anathema to the touchstone of reasonableness that is enshrined in the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 359 (1967).

Inspector McNulty's statement that, based on training and experience, "individuals involved in robberies . . . often keep the following in *their* residences and vehicles," does little to shore up probable cause. Doc. 69 at 16 (emphasis added). Based on this statement, one could possibly infer that because the Charger had been recently altered (to possibly evade or impede the robbery investigation), evidence of the missing hood with louvers or the rear spoiler could have been found at Boyce's residence on San Pablo Street. But Boyce's residence was not the target of

the requested search warrant; it was S.D.'s residence. And it is much more attenuated to reasonably infer that inculpatory evidence would be found at S.D.'s apartment, especially where key pieces of information—namely, that investigators never observed Boyce at his San Pablo Street residence, that investigators observed Boyce entering and leaving the Apartment, that S.D. was Boyce's girlfriend, and that S.D. leased and resided at the Apartment—were omitted from the affidavit.

Ultimately, the circumstances described in the affidavit fail to indicate the nature of Boyce's connection to the Apartment and, accordingly, the Court finds that the affidavit failed to provide a substantial basis for concluding that probable cause existed. However, although the affidavit was not a model of specificity,[3] evidence seized at the Apartment need not be suppressed if the executing officers acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate. *See Leon*, 468 U.S. at 922. For the following reasons, I believe this to be the case.

**B.     Evidence seized from the Apartment need not be suppressed because the executing officers acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate.**

It is axiomatic that there is a strong preference for searches conducted pursuant to valid warrants. *See, e.g.*, *Gates*, 462 U.S. at 236. But even this strong preference is undercut by several exceptions, including the good-faith exception articulated by the Supreme Court in *United States v. Leon*. *See* 468 U.S. at 922. In *Leon*, the Supreme Court modified the exclusionary rule to provide that evidence seized under a warrant later found to be invalid may still be admissible if the

---

[3] At the suppression hearing, the United States conceded that Inspector McNulty's affidavit was less than exemplary: "I do want to acknowledge that, would we use this particular warrant for training purposes on how warrants are supposed to be, no, we would not." June 1, 2023, Transcript of Suppression Hearing, at 14:8-10.

executing officers acted in good faith and with reasonable reliance on the warrant. *See id.* at 913; *see also United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (recognizing that the exclusionary rule mandates the suppression of evidence obtained as the result of an illegal search). The *Leon* Court reasoned that the primary purpose of the exclusionary rule—deterrence—is uncertain where an executing officer acted in good-faith reliance on the magistrate's probable cause determination or where "their transgressions have been minor." 468 U.S. at 908. To determine when to apply the exception, district courts look at "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Corral-Corral*, 899 F.2d at 932. Ultimately, it is the government's burden to demonstrate that the reliance was objectively reasonable. *Id.*

As the Supreme Court has explained, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. However, that is not to say that "exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms." *Id*. at 922. Circumstances will certainly arise where it is apparent that an officer lacks a reasonable basis for believing that a warrant was properly issued. *Id*. at 922-23. The scenarios where the good-faith exception does not apply, such that the exclusionary rule retains its force include the following: (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned the judicial role and failed to perform in a neutral and detached manner (the so-called "rubber stamp" for the police); (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *See id.* at 914-16.

Here, the United States argues that the good-faith exception applies because the affidavit was neither "bare bones" nor "devoid of facts." Doc. 72 at 9. In particular, the observations that the Charger was "still being driven" by Boyce and "parking" at the Apartment would lead any reasonable officer to conclude that the Apartment was in fact Boyce's residence. *Id.* Boyce counters, asserting that the good-faith exception does not apply because the facts of this case fall under the first and third scenarios articulated in *Leon*: the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit and the affidavit was "completely lacking indicia of probable cause." Doc. 78 at 2, 6-11, 14-16. These issues are addressed in turn below.

(1) The magistrate did not issue the warrant in reliance on a deliberately or recklessly false affidavit.

Boyce alleges that the inclusion of the 240 San Pablo Street address in the affidavit for the *storage unit* search was "blatantly false." Doc. 78 at 14; *see* Doc. 69 at 38. However, Boyce offers no evidence or argument that the affidavit for the *Apartment* search contained similarly false statements. Because the Court concluded that Boyce lacks standing to contest the storage unit search and because the facts do not support (and Boyce does not allege) that there was deliberate or recklessly false information in the affidavit for the Apartment search, there is no basis for concluding that the Magistrate Judge was hoodwinked into issuing the pertinent warrant in reliance on a deliberately or recklessly false affidavit.

(2) The magistrate did not abandon the judicial role and did not fail to perform in a neutral and detached manner.

There are no facts to suggest—and the Parties do not assert—that the Magistrate Judge merely served as a "rubber stamp" for law enforcement. Absent such facts, the Court finds that the Magistrate Judge did not abandon his judicial role, nor did he fail to perform his role in a neutral and detached manner.

(3) <u>The warrant was not based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.</u>

Despite the Court's finding that the affidavit lacked a substantial nexus between the criminal evidence sought and the Apartment to provide probable cause to search, the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See Corral-Corral*, 899 F.2d at 933-39. Specifically, the affidavit is neither devoid of facts nor can it be fairly described as "anemic." *See United States v. Cook*, 854 F.2d 371, 373 (10th Cir. 1988). It included information gathered from, *inter alia*, a confidential source, which was later corroborated by independent police investigation, connecting Boyce to the Charger. Doc. 69 at 21-22. The police investigation revealed that the Charger parked at the Apartment on several occasions prior to the submission of the search warrant application. *Id.* at 21, 26. In addition, the affidavit included information that investigators had followed the Charger from the market to the Apartment, where the driver (believed to be Boyce) parked in front of the Apartment. *Id.* at 22. It also included inferences made based on Inspector McNulty's training and experience that "individuals involved in robberies . . . often keep the following in their residences and vehicles," before listing various examples of criminal evidence. *Id.* at 16. Even though these facts were insufficient to demonstrate a substantial nexus for probable cause, the Court concludes that they establish a minimal nexus such that the executing officers' reliance on the legality of the warrant was objectively reasonable. *See Cook*, 854 F.2d 374; *Gonzales*, 399 F.3d at 1231 ("[G]ood faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established.").

(4) <u>The warrant was not so facially deficient that it failed to particularize the place to be searched or the things to be seized.</u>

Lastly, Boyce has not shown that the warrant was so facially deficient that it failed to

particularize the place to be searched or the things to be seized. Whether a warrant meets this test is guided by "practical accuracy rather than technical precision" and "[a] warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009). "The particularity requirement is satisfied when the description of an item to be searched for and seized pursuant to the warrant enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) (quoting *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988)).

In this case, the warrant did not authorize a general search of the Apartment, nor did it grant executing officers unfettered discretion to search and seize items at random. *See, e.g.*, *Leary*, 846 F.2d at 601, 609-10 (concluding that a search warrant affidavit was facially deficient where it authorized a "general search" of the premises and offered no guidelines to executing officers to assist in seizing records relating to violations of the federal export laws). Instead, it included the Apartment's address, a description of the Apartment, and specific items sought in relation to the robbery of the postal worker, including "weapons/firearms used during the crime, postal keys, clothing matching the clothing worn by the suspects during the robbery, and mail matter addressed to individuals other than the occupants of [the Apartment]," among other items. Doc. 69 at 24, 26; *see United States v. Wagner*, 951 F.3d 1232, 1245 (10th Cir. 2020) (determining that a search warrant affidavit was not so facially deficient where it clearly authorized agents to search only activating computers of a child pornography website and to seize computers used to "display or access information pertaining to a sexual interest in child pornography" or to "distribute, possess, or receive child pornography"). Therefore, I conclude that the warrant was not facially deficient so as to render the good-faith exception inapplicable.

**CONCLUSION**

For the foregoing reasons, the Court holds that suppression of the evidence found in the Apartment is not appropriate under the good-faith exception. Defendant's motion to suppress is therefore denied.

It is so ordered.

_____
MATTHEW L. GARCIA
UNITED STATES DISTRICT JUDGE