IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                           Case No. 1:22-cr-00361-MLG

RAYSHAWN BOYCE and
MARQUAE KIRKENDOLL,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
THE UNITED STATES' MOTION IN LIMINE**

This matter comes before the Court on the United States' motion in limine filed on February 17, 2023. Doc. 61. Defendant Marquae Kirkendoll filed a response, Doc. 65, to which co-defendant Rayshawn Boyce joined. Doc. 93. Having reviewed the parties' submissions and the applicable law, and having held a *James* hearing[1] on October 26, 2023, the Court grants the motion.

**BACKGROUND**[2]

On the morning of January 18, 2022, in Bernalillo County, New Mexico, a doorbell camera captured two individuals pulling a postal worker out of his mail truck by the back of his shirt, throwing him to the ground, and demanding his postal keys at gunpoint. Doc. 72 at 1-2. The

---

[1] "A *James* hearing is a proceeding to determine the admissibility of a statement made by a co-conspirator." *United States v. Garcia*, 74 F.4th 1073, 1130 (10th Cir. 2023). At the hearing, the district court has discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995).

[2] The Court summarized the relevant underlying facts in its June 13, 2023, Memorandum Opinion and Order, Doc. 83, and incorporates that discussion by reference here. The Court provides additional background for the purpose of resolving the present motion.

footage captured the assailants making the following statements: "Give me the keys!" "We want the keys," "Take 'em off," and "Put that on the ground." Doc. 61 at 2. The postal worker complied with the assailants' demands, detaching his keys from his service belt and turning them over. Doc. 69 at 19. Eventually, police investigators narrowed in on Boyce and Kirkendoll as the two suspects seen in the footage.

The police investigation revealed two additional sets of statements that were significant. First, Postal Inspector Kelly McNulty interviewed Boyce on February 15, 2022. Doc. 61 at 2; Doc. 106 at 79:1-10. During that interview, Boyce recounted a conversation he had with an acquaintance named "B."[3] Doc. 61 at 2. He had asked B about what she knew about arrow keys. *Id.* In response, B allegedly told Boyce that the keys open mailboxes. *Id.* Second, police discovered the following Snapchat exchange (which took place after the robbery) between Boyce and Kirkendoll, whose handle was "QuaeeMurdaa":

> QuaeeMurdaa: Just got my [vehicle] towed
> QuaeeMurdaa: Instant Karma [three laughing/crying face emojis]
> QuaeeMurdaa: T$$$$. Had to pay to get my [vehicle] back. Finna hit yo line
> Boyce: Let me get started. I ain't gon hit the blues yet I wanna see if that key work on the west
> . . .
> QuaeeMurdaa: Bet

*Id.* at 3; *see* Doc. 106 at 57:9-12.

Boyce and Kirkendoll were eventually arrested and charged with inter alia robbery of a postal employee, contrary to 18 U.S.C. § 2114(a), and conspiracy to commit using, carrying, and brandishing a firearm during and in relation to a crime of violence and possessing and brandishing a firearm in furtherance of such a crime, contrary to 18 U.S.C. § 924(c)(1)(A)(ii), (o). Doc. 31 at

---

[3] B allegedly had previous experience working for the U.S. Postal Service. Doc. 61 at 2.

1-3.

## DISCUSSION

The Government seeks the Court's "pretrial findings that [certain] evidence is admissible as either coconspirator statements, or admissible under other exceptions or exclusions from the hearsay rule." Doc. 61 at 1. These statements include (1) the statements allegedly made by Defendants as captured by the doorbell camera; (2) the statements made between Boyce and B;[4] and (3) the Snapchat conversation between Boyce and Kirkendoll. *Id.* at 3. Because Boyce and Kirkendoll concede that the statements captured on the doorbell camera footage are not hearsay, *see* Doc. 106 at 16:14-16; 21:17-19, the Court concludes that those statements are admissible non-hearsay. The Court limits its analysis to the statements between Boyce and B and the Snapchat conversation between Boyce and Kirkendoll.

**I.     The statements are non-hearsay under Rule 801(c).**

Hearsay is "a statement that[] (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Accordingly, if a declarant's statement is not intended as an assertion, it is not hearsay. Likewise, if a declarant's statement is not offered for the truth of the matter asserted, it is not hearsay. Hearsay is generally inadmissible. Fed. R. Evid. 802.

The Court concludes that the statements made between Boyce and B and the Snapchat

---

[4] It bears mentioning that the conversation between Boyce and B consists of statements made within a statement: (1) Boyce's question to B and her response and (2) Boyce's recounting of this conversation to Inspector McNulty. *See* Doc. 61 at 2. The Court only addresses the former in this analysis and reserves ruling on the latter if the Government elicits testimony from witnesses other than B about this conversation.

exchange between Boyce and Kirkendoll are not hearsay. First, the question by Boyce to B is—by definition—not hearsay because it does not contain an assertion. *See, e.g., United States v. Cesareo-Ayala*, 576 F.3d 1120, 1127-29 (10th Cir. 2009) (concluding that questions asserting nothing were not hearsay); *see also United States v. Jackson*, 88 F.3d 845, 848 (10th Cir. 1996) ("The mere fact . . . that the declarant conveyed a message with her question does not make the question hearsay."). And B's response is not hearsay because the Government is not offering it for the truth of the matter asserted (i.e., that the arrow keys in fact unlocked the blue mailboxes) but instead to show the effect upon the listener (i.e., that Boyce would allegedly use the information to inform his ultimate conspiracy to rob the postal carrier). *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) (explaining that statements offered not to prove the truth of the statements but rather "offered for the effect on the listener . . . are generally not hearsay"); *United States v. Smalls*, 605 F.3d 765, 785 n.18 (10th Cir. 2010) (same). Accordingly, if the Government seeks to elicit testimony about these statements directly from B, these statements are not hearsay and are admissible.[5]

Similarly, the Snapchat messages are not hearsay. The Government does not intend to offer the exchange for the truth of anything asserted. The statements are not being offered, for example, to prove that karmic energy resulted in Kirkendoll's car being towed or that Boyce had not yet opened blue mailboxes. Instead, the Government will introduce these statements for the mere fact that they were made. *See* Fed. R. Evid. 801 advisory committee's note to subdivision (c) (explaining that "[i]f the significance of an offered statement lies solely in the fact that it was made,

---

[5] The Government intends to elicit testimony from B about her conversation with Boyce. *See, e.g.*, Doc. 106 at 11:4-8. If it in fact does so, then Boyce and Kirkendoll may raise objections at trial. Likewise, if the Government seeks to admit these statements through Inspector McNulty's testimony, then Boyce and Kirkendoll may raise speaking objections at trial.

no issue is raised as to the truth of anything asserted, and the statement is not hearsay"); *see also United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006). The messages show Kirkendoll was aware of the arrow key and the purpose of the key (to open mailboxes). And neither Boyce nor Kirkendoll challenge the truth of anything asserted in the messages. These statements are not hearsay and are admissible.

**II.     Boyce's question to B and the Snapchat messages are admissible as coconspirator statements under Rule 801(d)(2)(E).**

A statement is admissible non-hearsay where it is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The party moving to admit a statement under this category must prove the following elements by a preponderance of the evidence: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were made during and in furtherance of the conspiracy. *See Owens*, 70 F.3d at 1123. Under the first element, the moving party must provide some independent evidence showing that "(1) there was an agreement to violate the law, (2) the declarant knew the essential objectives of the conspiracy, (3) the declarant knowingly and voluntarily took part in the conspiracy, and (4) the coconspirators were interdependent." *United States v. Rutland*, 705 F.3d 1238, 1249 (10th Cir. 2013) (citing *United States v. Ailsworth*, 138 F.3d 843, 850-51 (10th Cir. 1998)); *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987) (clarifying that "independent evidence" means "evidence other than the proffered statement"). The Court may consider inferential evidence including the defendant's conduct or other circumstantial evidence suggesting coordination or concert of action, *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009), or the hearsay statements themselves. *United States v. Parra*, 2 F.3d 1058, 1069 (10th Cir. 1993).

In this case, Boyce's question to B about the arrow key may alternatively be admitted

against Kirkendoll as a coconspirator statement. At the *James* hearing, the Court heard testimony from Inspector McNulty and received twenty-three (23) exhibits from the Government including surveillance camera footage taken on the same day as and from the area surrounding the robbery.[6] *See* Doc. 106 at 31:16-19 (beginning of McNulty's testimony); *see also id.* at 35:1-45:13 (testimony discussing surveillance camera footage).

First, there is sufficient independent evidence for the Court to conclude that a conspiracy[7] to steal mail keys existed between Boyce and Kirkendoll, even if they merely came to a tacit mutual understanding to so conspire. *See United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 474 (10th Cir. 1990) (clarifying that there is no requirement to prove an express or formal agreement was made). The Government produced the doorbell camera footage capturing the robbery of the mail carrier. Doc. 106 at 32:10-12; Gov't Exhibit 1. In the video, two subjects (alleged to be Boyce and Kirkendoll) are seen pulling the mail carrier out of the mail truck and throwing him to the ground, all while demanding the mail keys. Doc. 106 at 33:8-10. One of the subjects (believed to be Boyce) was seen in the footage wearing a gray top and blue pants. *Id.* at 8:16-18. Police later recovered the gray top and blue pants after executing a search warrant on a residence leased by Boyce's

---

[6] This evidence is proper for the Court to consider in determining whether the Government has carried its evidentiary burden to prove that there is a predicate conspiracy to support the admission of statements under Rule 801(d)(2)(E). *See Owens*, 70 F.3d at 1124.

[7] As noted earlier, Boyce and Kirkendoll were charged with conspiracy to commit using, carrying, and brandishing a firearm during and in relation to a crime of violence and possessing and brandishing a firearm in furtherance of such a crime. Doc. 31 at 1-3. However, during the *James* hearing, the Government specified that the conspiracy supporting the coconspirator statement was "conspiracy to steal the mail keys." Doc. 106 at 11:22-23. Notwithstanding the characterization of the exact conspiracy alleged to support the coconspirator statements, the two conspiracies are related: the conspiracy to use or brandish a firearm facilitated the conspiracy to steal mail keys. *See Rutland*, 705 F.3d at 1247-48. Indeed, "[t]he conspiracy supporting the introduction of the out-of-court statement need not be the same as the conspiracy charged in the indictment, so long as the statement was in furtherance of the uncharged conspiracy." *Id.* at 1248 n.4. As such, the Court's analysis presumes that the underlying conspiracy was to steal mail keys.

girlfriend, where Boyce was frequently an overnight guest. Doc. 83 at 3. More independent evidence in the form of Snapchat messages between Boyce and Kirkendoll demonstrates that Kirkendoll was aware that Boyce had an arrow key and confirmed Boyce's expressed intentions with the key. Gov't Exhibit 16; Doc. 61 at 3. In addition, Kirkendoll's phone number was pinged in the same area as and at the time of the robbery. Doc. 106 at 55:16-23. Taken together, this evidence demonstrates that Boyce and Kirkendoll agreed to violate the law (even if tacitly); knew the essential objectives of the conspiracy (to steal mail keys); knowingly and voluntarily took part in the conspiracy (both were seen in the footage); and were interdependent (Snapchat messages suggest concert of action).

Second, Boyce and Kirkendoll were members of the conspiracy—again, as demonstrated by the doorbell camera footage and Snapchat messages. Lastly, although it is unclear the exact date on which the conversation between Boyce and B occurred, the question was raised during and in furtherance of the conspiracy because it served to elicit useful information to inform the next steps of the conspiracy: assessing the potential rewards of setting out to steal mail keys. In sum, the Court finds that the Government has shown by a preponderance of evidence that a conspiracy existed; Boyce and Kirkendoll were members of that conspiracy; and that Boyce's question to B was asked during and in furtherance of the conspiracy. It is admissible non-hearsay under Rule 801(d)(2)(E).

Likewise, the Snapchat conversation may alternatively be admitted against Boyce and/or Kirkendoll as coconspirator statements. The same analysis from above applies for the first and second prongs of the test. As for the third prong, the Snapchat messaging occurred during and in furtherance of the conspiracy: it took place on the same day as the robbery and after the robbery took place. *See* Doc. 106 at 12:5-15. And the chat concerned the fruits of the conspiracy which

7

had not yet been realized: the stealing of mail. *See United States v. Morgan*, 748 F.3d 1024, 1036 (10th Cir. 2014) ("A conspiracy continues until its central purpose has been attained."). Because the Government has demonstrated the requisite elements by a preponderance of evidence, *see Owens*, 70 F.3d at 1123, the Snapchat exchange is alternatively admissible as coconspirator statements.[8]

## CONCLUSION

For the foregoing reasons, the Court grants the motion. Doc. 61. It is so ordered.

                                              UNITED STATES DISTRICT JUDGE
                                              MATTHEW L. GARCIA

---

[8] As an aside, the Court notes that the Snapchat messages are not hearsay if the statements are offered against the party who made them. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Brinson*, 772 F.3d 1314, 1317 (10th Cir. 2014) (holding that Facebook messages written by the defendant were admissible against him as statements of a party opponent). Indeed, defense counsel for Kirkendoll conceded this point at the *James* hearing. *See* Doc. 106 at 19:25-20:1-4 ("Now, I understand that when it comes to [Kirkendoll's] own [Snapchat] statements, he is dealing with the fact that . . . those are statements of a party opponent[.]"). Consequently, Boyce's Snapchat messages are admissible against Boyce and Kirkendoll's messages are similarly admissible against Kirkendoll under Rule 801(d)(2)(A).